IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO

IN RE:

CARMEN MILAGROS DAVILA RAMOS

DEBTOR

CASE NO. 21-00363 MCF

CHAPTER 13

**AMENDED MOTION TO DISMISS**

**TO THE HONORABLE COURT:**

**COMES NOW,** creditor **HECTOR NOEL RAMOS DAVILA** represented by the undersigned attorneys and respectfully prays and alleges:

1. That Héctor Noel Ramos Dávila, is a creditor and therefore a party in interest in the above captioned case.

*2.* That a Voluntary Petition was filed on February 9th, 2021. *Dkt.1.*

3. That creditor filed a Proof of Claim on March 17th, 2021. *Proof Of Claim #6.*

4. That a Chapter 13 Plan was filed on March 2nd, 2021 at *Docket 24.*

5. Debtor does not include in the plan full payment of creditor secured amounts.

6. That on the aforementioned plan Debtor requests a valuation of the property on Bo. Camino Nuevo Carr. 901, Yabucoa, Puerto Rico, even though the estimated value of the collateral is $100,000.00, and the secured amount is for $40,000.00.

7. On same plan Debtor intents to pay for commercial property to which creditor has a secured claim of $800,000.00, only $500,000.00.

8. Appraisal of both properties securing the loan is for an

amount of $870,000.00.

9. Secured debt as of to date is $814,262.24, it's in default and payable to creditor. *POC #6.*

10. Therefore, Debtor does not comply with bankruptcy principles and plan requirements for plan confirmation.

## I. <u>LEGAL BASIS FOR MOTIONS TO DISMISS</u>

Debtor has clearly abused the bankruptcy process. She has filed two bankruptcies[1] on the eve of the foreclosure of creditors properties. "The purpose of the bankruptcy code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process in order to avoid paying their debts." <u>Molitor v. Eidson (In re Molitor)</u>, 76 F.3d 218, 220 (8th Cir. 1996). Thus, § 1307(b) should not be used "as an escape hatch" by a dishonest debtor to avoid the repercussions of bad faith conduct or abuse of process once a § 1307(c) conversion motion is filed. *Id."* <u>Nichols v. Marana Stockyard & Livestock Mkt., Inc. (In re Nichols)</u>, 618 B.R. 1, 11

> Bankruptcy law, in 11 U.S.C. § 1307(c), states in relevant part:
> (c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter [11 USCS §§ 1301 et seq.] to a case under chapter 7 of this title [11 USCS §§ 701 et seq.], or may dismiss a case under this chapter [11 USCS §§ 1301 et seq.], whichever is in the best interests of creditors and the estate, for cause, including—
> (1) unreasonable delay by the debtor that is prejudicial to creditors…

---

[1] Case 20-00598, filed on February 7, 2020; and case 21-00363, filed on February 9, 2021.

"A "party in interest" no matter what doctrinal formulation is used: It has "an actual pecuniary interest" and a "practical stake" in the outcome of the case, and it would be "impacted" in a "significant way" by decisions made in the case. *See In re Reynolds*, 455 B.R. 312, 319 (D. Mass. 2011) (finding that a bank "had standing to move to convert the case as a 'party in interest' under 11 U.S.C. § 1307(c), regardless of whether it held secured or unsecured debt"); *In re Muscatello*, No. 06-11143, 2006 U.S. Dist. LEXIS 86486, 2006 WL 3437469, at *3 (N.D.N.Y. Nov. 29, 2006) ("A creditor is a 'party in interest,' and as such is an appropriate party to bring a motion to dismiss or convert under § 1307(c).") *Hardy v. Ross (In re Hardy)*, 561 B.R. 281, 286" *Hardy v. Ross (In re Hardy)*, 561 B.R. 281 (2016)

Creditor, Héctor Ramos, is a party in interest with the capacity to request a dismissal of the case due to the fact that his best interests are not protected by the proposed plan and Debtor's unreasonable delay in payment of this particular debt is causing prejudicial effects to creditor.

### **Possibility of Effective Reorganization**

When analyzing the possibility of an "effective reorganization", courts have determined that "[f]or property to be 'necessary to an effective reorganization' of the debtor…must [demonstrate] that an effective reorganization is realistically possible; the mere fact that the property is indispensable to the debtor's survival is insufficient." *United Sav. Ass'n of Tex. v.*

*Timbers of Inwood Forest Assocs.*, 484 U.S. 375-376, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988).

The property must be necessary for "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs.*, 484 U.S. 365, 376, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988). See, *In re Pegasus Agency, Inc.*, 101 F. 3d 882 (2d Cir. 1996).

A planned reorganization is feasible when there is a reasonable possibility of a successful reorganization within a reasonable time. In assessing whether a debtor can prove "a reasonable possibility of a successful reorganization within a reasonable time," courts generally apply a lesser standard in determining whether the debtor has met its burden earlier in the case rather than later. This standard has been referred to as the "sliding scale" burden of proof, "intended to benefit debtors who have a realistic chance of reorganization but who have not had sufficient time to formulate a confirmable plan. *In re Apex Pharmaceuticals, Inc.*, 203 B.R. 432, 441 (N.D. Ind.1996).

Examples of lack of reasonable likelihood of reorganization include that the reorganization of the business is not feasible, that the creditor's dissent makes a successful plan unlikely and that debtor's plan is unsupported by credible assumptions and projections that offer some basis for confidence that the plan could succeed. See, Collier Bankr.Cas. 362.07[5] (internal citations omitted).

In the decision of *In re Sabana del Palmar, Inc.*, 2013 Bankr.

LEXIS 2255, 2013 WL 2367830 (Bankr. D.P.R.), the Court found that the debtor had not met its burden to demonstrate a reasonable possibility of effective reorganization within a reasonable amount of time. In reaching such conclusion, the Court stressed that the debtor -a real estate developer- would not be able to generate enough income to pay the secured debt owed to the creditor that requested relief from the stay.

The Court considered such factors as: (a) debtors' property was fully encumbered and its sale would not generate enough funds to cover the secured creditors (much less unsecured creditors); (b) the fact that debtor had no ability to fund its operation during or after bankruptcy; (c) that any potential superiority post-petition financing (which would prime the secured creditor's lien) would have been inconsistent with providing adequate protection to the secured creditor; and (d) whether the plan indeed had a reasonable possibility of being confirmed within a reasonable time. *Id*. Based on the foregoing, the Court determined that the debtor had not met its burden of proof and failed to show that it can effectively reorganize for purposes of section 362(d)(2) of the Bankruptcy Code.

There exists a myriad of other cases which have considered the "effective reorganization" prong of section 362(d)(2) and have reached similar conclusions as in the *Sabana del Palmar* decision. See, *In re Albany Partners, Ltd.*, 749 F.2d 670, 673 (11th Cir. 1984) (the automatic stay was annulled when the court found it unlikely that the debtor could implement an effective

reorganization where the debt owed to the secured creditor was about twice as much as the value of the property and the monthly income was insufficient to meet timely payments and invest necessary amounts for capital improvements); *In re Canal Place Ltd. Partnership*, 921 F.2d 569, 577 (5th Cir. 1991) (the stay was lifted because the debtor's entire plan was based on speculative favorable economic conditions); In re Snapwoods Apartments of Dekalb County, Ltd., 153 B.R. 524, 526 (Bankr. S.D. OH 1993) (the stay was lifted as to a secured creditor after the debtor could not demonstrate that successful reorganization was likely when debtor's projected operating income was unrealistic); In re DB Capital Holdings, LLC, 454 B.R. 804 (Bankr. D. Colo. 2011) (a debtor who did not have equity in partially developed real property, and who could not obtain post-petition financing without priming the existing secured creditor's lien, failed to meet the effective reorganization test, as well as failed to establish that the existing lender would be adequately protected either by the periodic $100,000.00 payments that debtor proposed to make out of the proceeds of said superiority financing, or by speculative possibility of improvement of value of existing lender's collateral if development were successfully completed).

Creditor submits that no effective reorganization herein is possible for a number of reasons:

   a. First, given that the Real Estate properties have a last appraised market value of $870,000.00 whereas creditor's claim totals $814,262.24, we can observe that the majority of

potential proceeds and/or distribution generated from the Real Estate Collateral would go to creditor, without any benefit to any other constituency. This, since the Debtor has no equity in the Real Estate Collateral and any potential exit financing that the Debtor is considering, or may consider, assuming any such financing could be obtained would only yield a payment for creditor's claim.

b. Second, the Real Estate Collateral is not necessary to an effective reorganization as for the Debtors to be able to retain the same, it would have to pay in full creditors secured debt, for which the Debtors does not have the capacity of means.

In sum, the Debtors will not be able (because they are unable) to comply with the effective reorganization standard under section 362(d)(2) of the Bankruptcy Code. Thus, for these and other reasons, the stay should be lifted in favor of creditor as the Real Estate Collateral subject to creditor's lien is not "necessary for an effective reorganization".

**NOTICE OF TIME TO RESPOND**

Within fourteen (14) calendar days after service as certified below, or such other time as the court may order hereafter, the Debtor shall serve and file an objection or other appropriate response to this motion with the Clerk's Office of the U.S. Bankruptcy Court for the District of Puerto Rico. If no objection or other response is filed within the time allowed herein, the motion will be deemed unopposed and may be deemed automatically granted, unless: (1) the requested relief is forbidden by law; (2) the requested relief is against public policy; or (3) in the opinion of the Court, the interests of justice require otherwise.

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** That on this same date, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification to of such filing to **Ms. Monsita Lecaroz Arribas**, Esq. US Trustee's Office, Ochoa Building, Suite 301, 500 Tanca St., San Juan, PR 00901 and to Debtor's attorney **Jose A Leon Landrau**, PO Box 1687, Caguas, PR 00726 Email: jleonlandrau@yahoo.com.

In San Juan, Puerto Rico, this 21st day of July 2021.

/s/ **RAFAEL A GONZALEZ VALIENTE**
**USDC-PR NO. 225209**

*Counsel for Hector N Ramos Dávila*

**GODREAU & GONZALEZ, LLC.**
P.O. BOX 9024176
SAN JUAN, PUERTO RICO 00902-4176
Tel.: (787) 726-0077
rgv@g-glawpr.com

Case:21-00363-EAG13 Doc#:66 Filed:07/21/21 Entered:07/21/21 16:16:43 Desc: Main
Department of Defense Manpower Data Center Document    Page 9 of 10    Results as of : Jul-21-2021 09:02:47 AM

SCRA 5.8



# Status Report
## Pursuant to Servicemembers Civil Relief Act

| | |
|---|---|
| SSN: | XXX-XX-9855 |
| Birth Date: | |
| Last Name: | DAVILA RAMOS |
| First Name: | CARMEN |
| Middle Name: | MILAGROS |
| Status As Of: | Jul-21-2021 |
| Certificate ID: | 56KSCT4DT6J88VB |

| On Active Duty On Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects the individuals' active duty status based on the Active Duty Status Date ||||

| Left Active Duty Within 367 Days of Active Duty Status Date ||||
|---|---|---|---|
| Active Duty Start Date | Active Duty End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects where the individual left active duty status within 367 days preceding the Active Duty Status Date ||||

| The Member or His/Her Unit Was Notified of a Future Call-Up to Active Duty on Active Duty Status Date ||||
|---|---|---|---|
| Order Notification Start Date | Order Notification End Date | Status | Service Component |
| NA | NA | No | NA |
| This response reflects whether the individual or his/her unit has received early notification to report for active duty ||||

Upon searching the data banks of the Department of Defense Manpower Data Center, based on the information that you provided, the above is the status of the individual on the active duty status date as to all branches of the Uniformed Services (Army, Navy, Marine Corps, Air Force, NOAA, Public Health, and Coast Guard).  This status includes information on a Servicemember or his/her unit receiving notification of future orders to report for Active Duty.

*Michael V. Sorrento*

Michael V. Sorrento, Director
Department of Defense - Manpower Data Center
400 Gigling Rd.
Seaside, CA  93955

The Defense Manpower Data Center (DMDC) is an organization of the Department of Defense (DOD) that maintains the Defense Enrollment and Eligibility Reporting System (DEERS) database which is the official source of data on eligibility for military medical care and other eligibility systems.

The DoD strongly supports the enforcement of the Servicemembers Civil Relief Act (50 USC App. § 3901 et seq, as amended) (SCRA) (formerly known as the Soldiers' and Sailors' Civil Relief Act of 1940). DMDC has issued hundreds of thousands of "does not possess any information indicating that the individual is currently on active duty" responses, and has experienced only a small error rate. In the event the individual referenced above, or any family member, friend, or representative asserts in any manner that the individual was on active duty for the active duty status date, or is otherwise entitled to the protections of the SCRA, you are strongly encouraged to obtain further verification of the person's status by contacting that person's Service. Service contact information can be found on the SCRA website's FAQ page (Q35) via this URL: https://scra.dmdc.osd.mil/scra/#/faqs. If you have evidence the person was on active duty for the active duty status date and you fail to obtain this additional Service verification, punitive provisions of the SCRA may be invoked against you. See 50 USC App. § 3921(c).

This response reflects the following information:  (1) The individual's Active Duty status on the Active Duty Status Date (2) Whether the individual left Active Duty status within 367 days  preceding the Active Duty Status Date (3) Whether the individual or his/her unit received early notification to report for active duty on the Active Duty Status Date.

## More information on "Active Duty Status"

Active duty status as reported in this certificate is defined in accordance with 10 USC § 101(d) (1).  Prior to 2010 only some of the active duty periods less than 30 consecutive days in length were available.  In the case of a member of the National Guard, this includes service under a call to active service authorized by the President or the Secretary of Defense under 32 USC § 502(f) for purposes of responding to a national emergency declared by the President and supported by Federal funds.  All Active Guard Reserve (AGR) members must be assigned against an authorized mobilization position in the unit they support.  This includes Navy Training and Administration of the Reserves (TARs), Marine Corps Active Reserve (ARs) and Coast Guard Reserve Program Administrator (RPAs).  Active Duty status also applies to a Uniformed Service member who is an active duty commissioned officer of the U.S. Public Health Service or the National Oceanic and Atmospheric Administration (NOAA Commissioned Corps).

## Coverage Under the SCRA is Broader in Some Cases

Coverage under the SCRA is broader in some cases and includes some categories of persons on active duty for purposes of the SCRA who would not be reported as on Active Duty under this certificate.  SCRA protections are for Title 10 and Title 14 active duty records for all the Uniformed Services periods. Title 32 periods of Active Duty are not covered by SCRA, as defined in accordance with 10 USC § 101(d)(1).

Many times orders are amended to extend the period of active duty, which would extend SCRA protections. Persons seeking to rely on this website certification should check to make sure the orders on which SCRA protections are based have not been amended to extend the inclusive dates of service. Furthermore, some protections of the SCRA may extend to persons who have received orders to report for active duty or to be inducted, but who have not actually begun active duty or actually reported for induction.  The Last Date on Active Duty entry is important because a number of protections of the SCRA extend beyond the last dates of active duty.

Those who could rely on this certificate are urged to seek qualified legal counsel to ensure that all rights guaranteed to Service members under the SCRA are protected

WARNING:  This certificate was provided based on a last name, SSN/date of birth, and active duty status date provided by the requester.  Providing erroneous information will cause an erroneous certificate to be provided.